# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES HOUCK | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GJH-17-2801 |
| WESTERN CORRECTIONAL INSTITUTION, | * | |
| DPSCS, *Case Manager* CHIEF SECURITY, | * | |
| JOEY POINDEXTER, | * | |
| Defendants | * | |
| | *** | |
| JAMES HOUCK | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GJH-17-3182 |
| WESTERN CORRECTIONAL INSTITUTION, | * | |
| MS. BRAILIER, *Case Manager, DPSCS,* | * | |
| Defendants | * | |

## MEMORANDUM OPINION

James Houck is incarcerated at Western Correctional Institution (WCI).[1] Civil Action No. GJH-17-2801 is Houck's third complaint alleging that he is in danger from inmate Joey Poindexter.

---

[1] Houck pleaded guilty to first degree sex offense in Criminal Action No. 117811C (Cir. Ct. Montgomery Cnty.). On November 20, 2013, the Circuit Court sentenced him to serve a life sentence. *See State v. Houck,* Case No. 117811C (Mont. Co. Cir. Ct. 2013) at http://casesearch.courts.state.md.us/casesearch/inquiry.

Houck is a frequent pro se litigant in this Court. To date, he has filed at least 18 cases in addition to several petitions for federal habeas relief. Each of his cases have been dismissed or Defendants were granted summary judgment. *See e,g, Houck v. Warden*, Civil Action No. GJH-3352 (D.Md. 2018) (listing cases). On November 28, 2017, the Court limited the number of cases Houck may have pending at one time. After determining that immediate action was not necessary, this case was placed on administratively closed status until the number of Houck's pending cases was reduced. ECF No. 11.

Civil Action No. GJH-17-3182 is one of nine cases, including Civil Action No. GJH-17-2801, alleging Houck cannot be safely housed unless he is celled by himself. [2]

Houck is proceeding in forma pauperis in both cases. The in forma pauperis statute permits an indigent litigant to initiate an action in federal court without paying the filing fee. 28 U.S.C. §1915(a). To guard against potential abuse of this privilege, the statute requires a court to dismiss any claim by an indigent litigant which fails to state a claim upon which relief may be granted. 28 U.S.C.§ 1915(e)(2)(B)(ii). The above cases will be dismissed under this standard.

---

[2] Including the above discussed cases, this is at least Houck's ninth complaint claiming that he is in danger of harm unless he is housed in protective custody or transferred to a different facility. In *Houck v. Warden*, GJH-15-3639 (D. Md. 2015), he claimed he was in immediate danger and needed to be housed in a single cell. This Court noted that Houck's claims of imminent danger due to his double cell housing had recently been found uncorroborated after investigation in *Houck v. Dep't. of Public Safely and Corr. Serv.,* Civil Action GJH-15-1883 (D. Md. 2015). The Court therefore dismissed Houck's claims concerning his safety and threats of imminent harm without prejudice, dismissed the Warden as a defendant, and in an abundance of caution. directed the Office of the Attorney General to file a status report addressing Houck's housing. *Id.* ECF No. 11. The consequent status report indicated Houck was in a single cell and in protective housing since December of 2015.

In *Houck v. Department of Public Safety and Correctional Services*, GLH-15-1883 (D. Md. 2015), Houck's claims included that he was at risk for being a "snitch" and his cellmate "Joe" threatened to kill him and had made a "sex pass" at him. Houck did not allege that he had been harmed. The Court ordered the State to file an expedited Response which established that Houck was not housed with documented enemies; each time Houck alleged a risk to his safety he had elected not to provide information to investigate his concern; and that Houck had been on protective custody status since February 11, 2014. *Id*. ECF 23. The case was dismissed on November 11, 2015.

In *Houck v. Warden, Jessup Correctional Institutio*n, No. GJH-14-3907 (2015), Houck claimed he was sexually assaulted in March of 2014 and gang members wanted to kill him. The Court dismissed this case as moot on June 4, 2015, because Houck was transferred to WCI from Jessup Correctional Institution and was placed on the protective custody tier, providing him the relief that he had requested in the Complaint. The Court noted further that although Houck had claimed to have four witnesses to the sexual assault, he did not provide their names despite a request by this Court to do so, there were no known or reported assaults involving Houck, and the sexual assault was investigated, but Houck had refused to identify his assailant and he showed no physical injury. *Id.* ECF No. 36 at 2, 7.

Most recently, in *Houck v. Warden*, GJH-18-3352 and *Houck v. Warden*, GJH-18-3354, Houck alleged he is in danger from Bryant McCall, his current cellmate at WCI, McCall assaulted him, a hit has been placed on him, and he wants to be placed on protective custody and awarded damages. The cases have been consolidated for all purposes and the State was ordered to respond.

## I. Background

The Court incorporates by reference, its Memorandum Opinions, the parties' pleadings, and exhibits filed in Houck's previously adjudicated cases.

### A. *Houck v. Western Correctional Institution*, GJH-16-2123

In this case, Houck alleged that Joey Poindexter asked him for sex on June 2, 2016. Houck claimed there was a "hit" on him, and he feared for his life. Houck's only specific allegation was that Poindexter allegedly called him "hot" and asked for sex. Houck stated he had filed a Prison Rape Elimination Act (PREA)[3] claim about the incident but provided no further details to establish that he suffered physical injury or was in danger of physical injury. GJH-16-2123, Memorandum Opinion, ECF 16 at 2, 5. As relief, Houck sought transfer to another correctional institution, placement in protective custody, assignment to a cell by himself, and damages. *Id*., Complaint, ECF No. 1 at 1-2; ECF No. 16 at 2.[4]

Considering Houck's assertion of danger, the Court ordered an expedited response from the State. The State's Response included a declaration from Correctional Case Manager James Wilson dated July 15, 2015, in which he stated prior to Houck's arrival at WCI, Houck had been housed by himself pending sentencing. Since his arrival at WCI, Houck had been sharing a cell with Poindexter without incident. *Id*. ECF No. 5-1 at 1-2. Wilson stated that before Houck and Poindexter were housed together, each inmate's "enemy list" was reviewed to ensure they were not documented enemies. *Id*. ECF No. 5-1 ¶3. Wilson declared that Houck had not filed an Administrative Remedy Procedure (ARP) alleging that Poindexter was threatening to kill him or that he was sexually harassing Houck, nor had he filed a PREA complaint. *Id.* The State also

---

[3] *See* 42 U.S.C. §15601, *et seq*.

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

provided verified records showing that Houck was housed in protective custody, single cell placement had been considered for him and determined unnecessary, he had been housed with Poindexter without incident, and his safety continued to be monitored by prison staff. *Id*.; ECF No. 5 at 5.

On February 2, 2017, the Court granted Defendants' Motion for Summary Judgment and denied with prejudice Houck's Motion for a Temporary Restraining Order (to keep him on protective custody and to cell him by himself) and denied Houck's Motion for Summary Judgment. *Id.* ECF No. 16, 17 at 7-8.

### B. *Houck v. Warden*, WCI, Civil Action No. GJH-18-83

Houck claimed that he was unsafe in the general prison population at WCI due to an August 17, 2017 physical and sexual assault by his cellmate Poindexter[5] and claimed that the Bloods, a prison gang, had ordered a hit on his life. Houck claimed that at sentencing the judge had ordered him placed on protective custody for his safety because he had testified in a separate criminal action against other defendants. Complaint, ECF No. 1 at 3. Houck asked to be transferred to a different prison or celled alone and awarded damages. Houck requested in the alternative that he be housed on Unit 1 or 4 so that he could obtain a prison job. *Id*.

Defendants filed a copy of Houck's sentencing transcript with their dispositive motion which showed that the sentencing judge had recommended "that the Department of Corrections take whatever steps are necessary to house [Houck] in a secure and safe environment." ECF No. 10-2 at 40-41; ECF No. 33 at 2-3.

---

[5] The Court dismissed Poindexter from this action since Houck did not allege that he had committed the actions at issue under color of state law. Memorandum Opinion, ECF 33 n. 2., ECF No. 34.

Upon review of the transcript, it was clear that the judge had recommended, but did not, contrary to Houck's assertions, order his placement on protective custody. Importantly, the State's response also provided records indicating that none of the individuals on Houck's enemy list were housed near him. ECF No. 33 at 3. The Court also observed that Houck changed his description of the August 17, 2017 incident several times. Initially, he told WCI's Correctional Case Management Supervisor, Corey Walker, that he had an argument with Poindexter. Later Houck said that he had a physical altercation with Poindexter. On still another occasion, he alleged he was sexually assaulted. GJH-18-83 Memorandum Opinion, ECF No. 33 at 3; *see also* Decl. of Corey Walker, ECF No. 10-1 ¶ 4.

The Court determined that following the altercation with Poindexter, Houck was escorted to the medical room for evaluation and placed on administrative segregation pending investigation by the Internal Investigation Division (IID). Poindexter denied sexually assaulting Houck. Poindexter told the IID investigator that Houck had been threatening to use PREA to get out of WCI and that Houck's attack on him was a way to "get a single cell." ECF No. 33 at 5-6. Poindexter told the investigator that "Houck has been acting crazy for several days by making threats and calling him vulgar names." *Id.* at 5. Poindexter said earlier on the day of the incident, Houck had accused him of getting into his locker and threatened to kill him. Poindexter claimed Houck had two weapons, one of which was an ink pen. Poindexter described how Houck had backed him against the wall, and then stabbed him in the right arm with the pen. *Id.* Poindexter claimed he was defending himself during the altercation, and that Houck had been threatening to use PREA to get out of WCI for weeks. *Id.* The IID investigator determined that Poindexter's medical record was consistent with his reported injury. *Id.* at 6. After the IID investigator interviewed Houck and Poindexter and reviewed their medical records after the incident, he

concluded Houck's claims were unsubstantiated. *Id.* Indeed, Houck's own statements to the investigator show he was unsure whether a sexual assault had occurred. ECF No. 33 at 5.

Poindexter's written statement about the incident, written on August 17, 2017, reads:

> [Houck's] transfer request to a medium security prison was denied on Friday, and since this past weekend, he has been getting in my face several times a day, looking for a fight. He started this past Saturday by blaming me for his transfer request being denied. I know it makes no sense, but in his mind, it was apparently my fault. His exact words to me were "they want to keep me here so I can kill your faggot ass."

*Id.* at 6.

Houck declined to provide a statement after the incident. The state's verified records showed that Houck was not housed at the same facility (WCI) as his verified enemies and, since the August 17, 2017 incident he was housed away from Poindexter. *Id.* at 5, 10. As to the alleged hit ordered on him, Houck admitted to the IID investigator that he had received no verbal or written threats. *Id.* at 7, 10.

On November 15, 2017, Houck's case manager informed him that he would be moved from protective custody to general population housing at WCI. Houck lived in the general prison population at WCI without incident between December 1, 2017 and February 6, 2018. *Id.* at 6. On February 8, 2018, Houck was moved to administrative segregation housing pending an investigation into charges of possessing a weapon in his cell. *Id.* at 6.

Houck's Complaint and supplemental filings did not specifically allege Defendants violated his constitutional rights or federal law. To the extent Houck intended to bring an Eighth Amendment claim of failure to protect him from violence based on his return to the general prison population after the August 2017 incident, the Court concluded that Houck did not demonstrate danger of imminent serious harm requiring placement in a single cell in protective custody or a transfer to the correctional facility of his choice. The Court also noted that Houck's ever changing

6

and varied requests for housing reassignments undercut his assertion that he needs to be transferred due to safety concerns. GJH-18-83, ECF 33 at 10; *see also* ECF No. 10 at 1-2 (summarizing Houck's housing requests). On September 11, 2018, the Court granted Defendants' Motion for Summary Judgment and ordered the case closed.

II. DISCUSSION

    A. Civil Action No. GJH-17-2801

After Houck filed his Complaint in this case, he submitted six additional filings, all repeating that he is unsafe unless he is housed in protective custody and celled by himself or transferred to a different correctional facility. ECF Nos. 1, 3, 7, 10, 12, 13, 14. Houck's Complaint and supplemental filings do not identify a federal law or constitutional provision allegedly abridged by Defendants.

Houck states that on May 16, 2016, he was placed in a cell with Poindexter. Houck claims unnamed officers on the prison tier knew that "this guy like [sic] to rape man [sic] but they put him in my room." Complaint, ECF No. 1 at 2. Houck claims that on August 6, 2017,[6] Poindexter sexually harassed and threatened to kill him. *Id.* Houck claims Poindexter hit him in the face and body; choked him; and when Houck awoke, his pants were down. *Id.* at 3. Houck claims that he informed Case Manager Brailler[7] and Officer Shockley[8] on August 14, 2017 [9] that he was being

---

[6] Houck's description of the incident is the same as the one he described in Civil Action No. GJH-18-83, which occurred on August 17, 2017.

[7] Houck also spells Brailler's name as Brailier. *Houck v. Western Correctional Institution*, Civil Action No. GJH-17-3182, Complaint, ECF No. 1 at 1.

[8] Houck does not name Officer Shockey as a Defendant in the Complaint.

[9] The IID Report shows that Houck filed a PREA complaint of sexual harassment on the PREA hotline on August 14, 2017. GJH-18-83, ECF No. 10-2 at 1-5. The IID Report shows the PREA complaint was reported to WCI on August 17, 2018. *Id*.

7

sexually harassed and asked that Poindexter be moved because he feared for his safety, but they did not move him. Poindexter alleges that he called "PREA"[10] on August 6, 14, and 15, 2017 about his concerns, wrote to the Warden and the Chief of Security on a date he does not specify, and filed an administrative remedy procedure ("ARP") request about his safety concerns, but they did not remove Poindexter from the cell. *Id*. at 2-4. Houck again claims he was supposed to be placed in a single cell alone on protective custody for his safety, pursuant to the sentencing judge's directive. *Id.* at 5.[11] He also claims that he was supposed to be transferred to Jessup Correctional Institution (JCI) or a facility in Hagerstown, where he would be on protective custody. *Id*. In one supplement, Houck claimed he feared for his safety because he had been threatened and harassed by unnamed staff in retaliation for filing this lawsuit. ECF No. 3-1 at 5. Notably, Houck does not identify staff who allegedly threatened him, nor does he specify the dates or describe the actions that occurred.

Houck asks for injunctive relief to transfer him to JCI or the Maryland Correctional Institution-Hagerstown on protective custody alone in a single cell or monetary damages. *Id.* at 6.

### 1. Claims Against the Warden and Chief of Security

For liability to exist under 42 U.S.C. § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926. 928 (4th Cir. 1977); *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362. 370-71 (1976). Under certain circumstances, supervisors and administrators may be held culpable under principles of supervisory liability. *See Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) ("Supervisory liability under 42 U.S.C. § 1983 must be supported with evidence: '1) that the supervisor had actual

---

[10] Houck seems to be referring to the Department of Public Safety and Correctional Services' (DPSCS) Prison Rape Elimination Action (PREA) hotline.
[11] Houck does not provide grounds for this supposition. As discussed above, he misunderstood the sentencing judge's housing recommendation.

8

or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'") (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Here, Houck's only mention of the Warden and the Chief of Security is that he wrote a letter to each on unstated dates without particularizing the contents of the letters. This summary reference is insufficient to demonstrate personal participation or premise supervisory liability. Accordingly, the claim against the Warden and the Chief of Security will be dismissed for failure to state a claim upon which relief may be granted.

    2. **Claims Against WCI**

Defendant WCI is not a "person" subject to suit under 42 U.S.C. § 1983. This Court and others have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Francis v. Western Correctional Institution,* No. Civ. Action GJH-16-2898, 2017 WL 3500401, at *3, citing *Smith v. Montgomery Cty. Corr. Facility*, No. CIV.A. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983."); *Preval v. Reno,* 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Thus, the claims against WCI will be dismissed for failure to state a claim on which relief may be granted.

9

### 3. Claims Against Joey Poindexter

Similarly, Houck's claims for injunctive relief and damages against Poindexter must fail. Houck does not allege, nor does the record suggest, that Poindexter, a fellow inmate, is a state actor subject to liability under 42 U.S.C. §1983. *See West v. Atkins,* 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). The claims against Poindexter will be dismissed for failure to state a claim upon which relief may be granted.

### 4. Claims Against DPSCS Case Manager

Houck does not specify the name of the Defendant case manager. Assuming he intended to name Ms. Brailler, the Court shall examine his sole claim against her. Houck alleges that on August 14, 2017, he told her that he was being sexually harassed and asked that Poindexter be moved because he feared for his safety.

Inmates have an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). To that end, "[p]rison officials are . . . obligated to take reasonable measures to guarantee inmate safety." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). For a prison official to be found liable under the Eighth Amendment, "the official [must know] of and disregard[ ] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Farmer*, 511 U.S. at 834, 837.

Objectively, the inmate "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury." *Danser*, 772 F.3d at 346–47 (quoting *Farmer*, 511 U.S. at 834). Subjectively, the inmate must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. Where prison officials responded reasonably to a risk, they may be found free of liability. *Id.* at 844.

Here, Houck's only allegation is that he told Brailler that he was being sexually harassed and asked that Poindexter be moved because he feared for his own safety. Houck alleges no facts to show Brailler had actual knowledge of an excessive risk to his safety and acted with deliberate indifference to disregard the risk. Up to that time, Houck had claimed no incidents with Poindexter, had a history of repeated requests for being housed by himself, and Houck and Poindexter inmates were not documented enemies. Accordingly, Houck's summary allegation is insufficient to support a claim of deliberate indifference and will be dismissed for failure to state a claim.

### B. Civil Action No. GJH-17-3182

Houck claims that he talked to Brailler, his case manager on June 12, 2017. He alleged in the Complaint that he was having "trouble" on the tier. Civil Action No. GJH-17-3182 ECF No. 1 at 3. In a note written on the margin of the Complaint, he alleges he will be killed at WCI and Brailler does not care and wants to keep him there. *Id.* at 5. He asked to be moved to medium security, transferred to JCI, or to a facility in Hagerstown, but the case manager said he could not be moved to medium security because a detainer had been lodged against him. ECF No. 1 at 6.

11

Houck disputes there is a detainer against him. *Id.* He alleges that he told Brailler that he was threatened by an unnamed inmate and he has been called "hot" on the tier. *Id.*[12] He complains that he should be housed on protective custody in a single cell alone, that all inmates on protective custody should be moved to a facility like JCI and have prison jobs and get GED training and other programming.[13] Civil Action No. GJH-17-3182, ECF No. 1. at 2. He asks for a new prison policy to house all protective custody inmates alone in their cell. Further, he asks for punitive and monetary damages because his life is in danger, to be moved to a cell where he is housed alone, to work at a prison job, and to be transferred to JCI or to the Maryland Correctional Institution in Hagerstown, a medium security prison. *Id*. at 5, 8. He claims he will be retaliated against by Brailler and unnamed correctional officers. *Id*. at 6. He does not specify any retaliatory act did occur, nor does he indicate why these individuals would want to retaliate against him.

Houck essentially faults Brailler for denying his request for a transfer because he has a detainer lodged against him. Although Houck states the detainer was lifted, his allegation is insufficient to support a claim of deliberate indifference to a substantial risk of harm. Houck alleges to have informed Brailler only that he was having trouble on the tier. He did not identify a particular individual, much less Poindexter his then cellmate, as the cause for the alleged danger. In light of Houck's lack of specificity regarding the source of danger and his perpetual requests for new housing, Brailler's alleged failure to "care" or take action to move Houck does not support an Eighth Amendment failure to protect claim. Brailler did not, by Houck's own account, transfer

---

[12] Houck appears to refer to his cellmate Joey Poindexter. Of import, Houck does not allege that he identified Joey Poindexter by name or as his cellmate to the case manager.

[13] Inmates do not have a constitutional right to a prison job, and therefore, the deprivation of a prison job does not state an independent constitutional claim. *See Bulger v. U.S. Bur. of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978). *Cf.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (no due process right in qualification for institutional programs). Houck's request for a transfer so that he could obtain a prison job undercuts his assertions of danger.

him to a different institution or change his security status, because she believed that a detainer against him rendered him ineligible for this status.

There is no constitutional guarantee regarding cell assignments. "In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing" inmates. *Veney v. Wyche*, 293 F.3d 726, 734 (4th. Cir. 2002). This court recognizes that if a plaintiff's allegation that he has been threatened with harm by a cellmate becomes the sole criteria for single cell assignment, prison administrators will be susceptible to manipulation by inmates with housing preferences. Houck is cautioned that continued unsubstantiated allegations of harm filed in this Court will result in appropriate sanctions.

### III. Three Strikes Rule, 28 U.S.C. 1915(g)

Under 28 U.S.C. § 1915(g) a prisoner litigant will not be granted in forma pauperis status if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Because the above two complaints are dismissed for failure to state a claim upon which relief may be granted, the Clerk shall be directed to note a "strike" on each docket. Houck was assigned a strike in an earlier case, *Houck v. Janssen Pharmaeuticals*, Inc., Civil Action No. GJH-17-1136 (D. Md. 2017), making these his second and third strikes pursuant to the statute. Houck is cautioned that he must pay the full filing fee (currently $400) when submitting future complaints unless he can establish he is under an imminent danger of serious physical injury.

## IV. CONCLUSION

The Court will in a separate Order dismiss Civil Action No. GJH-17-2801 and Civil Action No. GJH-17-3182 for failure to state a claim and assign Houck a second and third strike under 28 U.S.C. § 1915(g).

February 28, 2019       __/s/_____
Date       GEORGE J. HAZEL
     United States District Judge